Donna L. Depoian, Esq. (BBO # 547215)
614 Forest Street
North Andover, MA 01845
Telephone: 978-725-8880
    -and-
ANDERSON KILL & OLICK, P.C.
John N. Ellison, Esq.
Claudine Q. Homolash, Esq.
1600 Market Street
Suite 2500
Philadelphia, PA 19103
(215) 568-4202
Attorneys for Plaintiff
Champps Entertainment, Inc.

04   11444 RWZ

MAGISTRATE JUDGE Bowler

RECEIPT # 56878
AMOUNT $150
SUMMONS ISSUED yes
LOCAL RULE 4.1
WAIVER FORM
CF ISSUED
BY DPTY. CLK. Town
DATE 6/24/04

**UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

CHAMPPS ENTERTAINMENT, INC.,
1035 Park Meadows Drive, Suite 560
Littleton, Colorado 80124

　　　　　　　　　　　　　　Plaintiff,

v.

AMERICAN INTERNATIONAL GROUP,
INC., and
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,
70 Pine Street
New York, New York 10270

　　　　　　　　　　　　　　Defendants.

CIVIL ACTION NO. _____

**JURY TRIAL DEMANDED ON ALL COUNTS**

## COMPLAINT

Plaintiff Champps Entertainment, Inc. ("Champps"), by its undersigned counsel, hereby submits its Complaint against Defendants American International Group, Inc. and National Union Fire Insurance Company of Pittsburgh, PA (collectively, "AIG"), and in support thereof, avers as follows:

PHIDOCS-37343.2

## Preliminary Statement

1. This is an action for violations of the Massachusetts Consumer Protection Act (M.G.L. c. 93A), for a declaratory judgment, for breach of contract, and for injunctive relief.

2. This lawsuit arises out of AIG's failure to acknowledge and honor its release of Champps, as successor to DAKA International, Inc. ("DAKA"), from financial liability for any further payments for claims that are covered by insurance policies purchased by DAKA from AIG for events occurring during the 1994 through 1997 policy periods.

3. Specifically, AIG's wrongful failure to acknowledge its release of Champps from any further liability under these insurance policies and AIG's wrongful withholding of a $526,000 irrevocable standby letter of credit and a surety bond posted for approximately $526,254, in connection with the insurance policies, has caused and continues to cause Champps substantial damage.

## Parties

4. Plaintiff Champps is a Delaware corporation with its principal place of business at 10375 Park Meadows Drive, Suite 560, Littleton, Colorado 80124.

5. Up until December 1999, Champps and DAKA's principal place of business was at 55 Ferncroft Road, Danvers, Massachusetts 01923. In December 1999, Champps relocated its corporate headquarters to Littleton, Colorado, but still maintains an office in North Andover, Massachusetts.

6. Champps owns and operates restaurants and franchises throughout the United States.

7. Defendant American International Group, Inc. ("AIG Inc.") is a corporation organized under the laws of Delaware that maintains a principal place of business at 70 Pine Street, New York, New York, licensed to do business in the Commonwealth of Massachusetts.

8. Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union") is a member company of AIG, Inc. and a corporation organized under the laws of the Commonwealth Pennsylvania, that maintains a principal place of business at 70 Pine Street, New York, New York 10270.

9. National Union is an insurance company licensed to do business in the Commonwealth of Massachusetts and the insurance company that sold the insurance policies to DAKA.

**Jurisdiction and Venue**

10. The subject matter jurisdiction of this Court is based upon 28 U.S.C. § 1332, in that there is complete diversity of citizenship among the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391, in that a substantial part of the events giving rise to this action occurred in this District.

## Factual Background

### A. The Relationship Between Champps and DAKA

12. In February 1996, Champps was acquired by DAKA, a diversified food service company.

13. In July 1997, DAKA "spun off" its restaurant companies, including those companies operating Champps Americana Restaurants and Fuddruckers Restaurants, into a newly formed company, Unique Casual Restaurants, Inc. ("Unique").

14. As successor to DAKA by virtue of the "spin-off", Unique assumed certain liabilities pertaining to DAKA that occurred prior to the "spin-off" and indemnified Compass, the current owner of DAKA, against losses relative to these matters.

15. As a direct result of the "spin-off", Unique assumed all liabilities and benefits of DAKA's insurance coverage, including the coverage that AIG provided to DAKA for the 1994 through 1997 policy periods.

16. In July 1999, Unique changed its name to Champps, and Champps thereby assumed all of the liabilities and benefits of DAKA's insurance coverage provided by AIG for the 1994 through 1997 policy periods.

### B. DAKA's Insurance Coverage

17. DAKA's insurance coverage consisted of various types of coverage, including property, business automobile, workers compensation, employers liability and commercial general liability coverages (the "DAKA Policies").

18. Most of the DAKA Policies, including the workers compensation and general liability policies, were "Large Deductible" policies, each containing a deductible of $250,000 per incident.

19. The workers compensation insurance policies contained a "Final Premium" section, which sets forth AIG's obligation to determine the "Final Premium" once the policy period ends (the "DAKA Workers Comp. Policies").

### C. The Surety Bond and the Irrevocable Standby Letter of Credit

20. Throughout the years the DAKA Policies were in place, DAKA, Unique and subsequently Champps all placed surety bonds with Continental Casualty Company ("CNA") as collateral for the DAKA Policies.

21. In addition to posting the surety bonds, AIG was also annually provided with cash collateral in connection with the DAKA Policies in excess of one million dollars.

22. On February 11, 1999, at AIG's request, Champps replaced the current surety bond with an irrevocable standby letter of credit of $526,000 for the payment of claims under the DAKA Policies. (A copy of the Irrevocable Standby Letter of Credit is attached hereto as Ex. "A").

23. From the time Champps assumed its liabilities under the DAKA Policies up until their final adjustment, Champps continued to make claim-related payments as AIG requested.

D. **Final Adjustment Under the DAKA Policies**

24. Prior to November 6, 2001, Champps had made payments in excess of $11,000,000 to AIG.

25. By letter dated November 6, 2001, Robert Wynne, Senior Vice President for Willis Corroon Corporation of Massachusetts, Inc. ("Willis Corroon"), the insurance broker for the DAKA Policies, advised Champps that a final retrospective premium adjustment payment of $460 was owed under the DAKA Policies.

26. Enclosed with the November 6, 2001 letter was a copy of the final adjustment from AIG dated June 4, 2001 (the "June 4, 2001 Final Adjustment").

27. The June 4, 2001 Final Adjustment states:

Re:  Account Name:        Daka International, Inc.
     Policy Period:        7/1/94-7/1/97
     Valuation Date:       03/31/2001
     Adjustment #:         **Final**
     Retro Premium/Return: $460

       \*  \*  \*

**There will be no more adjustments done to this account. The policies captioned above can be considered "FINAL AND COMPLETE."** If you have any questions feel free to contact me at (212) 770-1279.

(Letter from Anthony J. Conti of AIG to Willis, dated June 4, 2001 (emphasis added), attached hereto as Ex. "B ").

28. The June 4, 2001 Final Adjustment also included a Loss Provision Adjustment Report for DAKA prepared by AIG.

PHIDOCS-37343.2

—6—

29. The Loss Provision Adjustment Report also reflected a final payment due of $460.

30. By letter dated November 30, 2001, Champps responded to AIG's payment request, forwarding along with its response a check for $460.

31. In Champps' November 30, 2001 letter, Champps reconfirmed facts stated in Willis Corroon's November 6, 2001 letter and the June 4, 2001 Final Adjustment, most importantly that no additional payments under the DAKA Policies are due.

32. Champps' November 30, 2001 letter specifically requested:

> If this does not satisfy DAKA International, Inc.'s ultimate and final liability for the insurance policies and periods stated above, do not cash this check. Please return it to my attention.

(Letter from Frederick J. Dreibholz to Anthony J. Conti, dated November 30, 2001, attached hereto as Ex. "C ").

33. Champps' November 30, 2001 letter also notified AIG that Champps was terminating the irrevocable standby letter of credit that was posted in place of the surety bond.

34. On December 12, 2001, AIG cashed Champps $460 check, indicating AIG's agreement that DAKA's "ultimate and final liability" under the DAKA Policies was satisfied.

35. On January 2, 2002, as a final measure to ensure that all liabilities regarding the DAKA Policies had been satisfied, Champps forwarded a confirmation letter to AIG. (A copy of the January 2, 2002 letter is attached hereto as Ex. "D").

36. On January 22, 2002, Champps received a response from AIG regarding Champps' January 2, 2002 letter, executed by an AIG official with appropriate authority, once again confirming that "the insurance liability for DAKA International, Inc. has been satisfied." Id.

### E. AIG's Subsequent Demands For Payment Despite Champps' Complete Satisfaction Under the DAKA Policies

37. From January 2, 2002 through this year, Champps has received invoices from AIG for claims paid, or has received telephone calls from AIG regarding outstanding balances claimed to be owed under the DAKA Policies.

38. Champps responded to AIG's requests for payment by forwarding letters to AIG indicating that Champps liabilities under the DAKA Policies had been completely satisfied.

39. AIG never replied to any of Champps' response letters addressing AIG's requests for payment.

40. In addition, AIG's multiple subsequent requests for payment are both inconsistent and unsubstantiated.

41. In November 2002, Champps began receiving demands from AIG for $1.5 million allegedly owed under the DAKA Policies with no supporting documentation that would substantiate this outstanding balance.

42. By e-mail dated September 24, 2003, without any explanation, AIG indicated that a balance of $57,186 was owed for DAKA's premium and audit/retro adjustments.

43. By letter dated October 29, 2003 from AIG to Champps' current insurance broker, AIG indicated, without providing any detail regarding the paid losses by claimant for the time period in which the claims were incurred, that claims payments under the DAKA Policies totaled $4,078,361.06, and that Champps owed an outstanding balance of $1,553,211.06.

44. Champps also received multiple invoices from AIG's Alpharetta, Georgia office, demanding payment in the amount of $72,945.25, an amount obviously inconsistent with AIG's other payment requests.

## F. AIG's Failure to Release Champps' Surety Bond and Irrevocable Standby Letter of Credit

45. As set forth above, in February 1999, Champps posted an irrevocable surety bond in the amount of $526,254, for the payment of claims under the DAKA Policies. This surety bond was subsequently replaced with an irrevocable standby letter of credit in the amount of $526,000 in November 2003.

46. In order to cancel Champps liability under both the surety bond and the letter of credit, AIG's authorization is required.

47. Even though AIG released Champps from any further liability under the DAKA Policies, AIG has refused and failed to release the surety bond and the irrevocable standby letter of credit, despite repeated requests from Champps.

48. Despite its previous release of Champps from any further liability under the DAKA Policies and written representations that the DAKA Policies can be considered "FINAL AND COMPLETE", AIG continues to demand substantial payments from Champps under the DAKA Policies without substantiation.

### Count I
### Injunctive Relief

49. Champps realleges and incorporates by reference all of the allegations stated above.

50. Based on the foregoing, as a result of its release of Champps from any further liability under the DAKA Policies, AIG was likewise obligated to release the irrevocable letter of credit and the surety bond, which it has failed and refused to do.

51. Due to the nature of these instruments, Champps is required to obtain AIG's consent to have them released and closed.

52. AIG's refusal and failure to consent is without legal justification.

53. Champps will suffer irreparable harm if AIG is not enjoined from drawing down on the surety bond and the letter of credit, and ordered to release these instruments.

54. Any harm suffered by AIG by the granting of injunctive relief would be minimal and would be far outweighed by the harm to Champps that would be caused by the denial of injunctive relief.

55. Granting Champps injunctive relief will not disserve any public interest.

WHEREFORE, Champps demands injunctive relief enjoining AIG from drawing down on the surety bond and the letter of credit and consenting to the release of these instruments, interest and costs, and all other damages that are necessary and appropriate.

## Count II
## Declaratory Judgment

56. Champps realleges and incorporates by reference all of the allegations stated above.

57. Champps seeks a declaration, in accordance with the terms of the DAKA Policies and AIG's agreement that Champps' liability under them has been satisfied, that it owes AIG no further payments under the DAKA Policies.

58. Champps seeks a declaration that, because Champps has no additional financial obligation to AIG, that AIG is required to immediately release the surety bond and the irrevocable standby letter of credit posted by Champps in connection with the DAKA Policies.

59. While Champps has no further financial obligation to AIG under the DAKA Policies or any other insurance policies that it sold to Champps, AIG continues to demand payments from Champps.

60. Notwithstanding its release of Champps, AIG continues to refuse to release Champps' surety bond and irrevocable standby letter of credit.

61. An actual and justiciable controversy exists between the parties with respect to these issues.

WHEREFORE, Champps demands a judicial declaration by this Court that: 1) Champps is released from all liability under the DAKA Policies; 2) that AIG is required to immediately release the surety bond and the irrevocable standby letter of credit posted by Champps for AIG in connection with the DAKA Policies; and 3) together with all compensatory and consequential damages, costs of suit, reasonable attorneys' fees, pre-judgment interest, post-judgment interest, and such other relief as this Court deems just.

### Count III
### Account Stated

62. Champps realleges and incorporates by reference all of the allegations stated above.

63. AIG sent Champps a statement of Final Adjustment and Loss Provision Adjustment Report indicating that a final payment of $460 was due and owing (the "Statement of Account").

64. Champps accepted the Statement of Account as a final balance due to AIG under the DAKA Policies, forwarding a check to AIG in the amount of $460, requesting that AIG not cash the check unless it agreed that the $460 payment fully satisfied Champps ultimate and final liability under the DAKA Policies.

65. AIG cashed the $460 check without protest or objection, duly acknowledging that Champps' payment of $460 was true and correct, and deemed a final payment.

66. On January 22, 2002, Champps received a signed confirmation from an AIG official with appropriate authority confirming that the insurance liability under the DAKA Policies had been fully satisfied.

67. By reason of the foregoing, any further obligations that Champps may owe to AIG under the DAKA Policies were discharged by an account stated.

WHEREFORE, Champps demands a judgment discharging Champps from all liability under the DAKA Policies and immediately releasing the surety bond and the irrevocable standby letter of credit posted by Champps for AIG in connection with the DAKA Policies, together with all compensatory and consequential damages, costs of suit, reasonable attorneys' fees, pre-judgment interest, post-judgment interest, and such other relief as this Court deems just.

### Count IV
### Violations of M.G.L. c. 93A

68. Champps realleges and incorporates by reference all of the allegations stated above.

69. The actions and transactions herein alleged to be unfair and deceptive acts or practices occurred primarily and substantially within the Commonwealth of Massachusetts.

70. Among other things, the DAKA Policies were brokered in Massachusetts; the insurance broker, Willis Corroon, for the DAKA Policies was located in Massachusetts; the AIG office underwriting and selling of the insurance policies was located in Massachusetts; and the relevant offices of DAKA and Champps were at all relevant times located in Massachusetts.

71. Champps engages in trade or commerce within the meaning of M.G.L. c. 93A, § 11.

72. During the course of engaging in trade or commerce in the Commonwealth of Massachusetts, AIG has committed unfair or deceptive acts or practices declared unlawful by M.G.L. c. 93A, § 2, and by rules and regulations issued under M.G.L. c. 93A, § 2(c), including but not limited to the following:

    a. AIG has misrepresented material facts pertaining to Champps liability under the DAKA Policies by, among other things:

        (i) Representing falsely and inconsistently that Champps had further payment obligations under the DAKA Policies, despite its earlier release and discharge of Champps from any further liability under the DAKA Policies;

        (ii) Concealing material information regarding its calculations concerning amounts purportedly owed by Champps under the DAKA Policies;

     (iii) Providing to Champps multiple letters and invoices concerning amounts still owed under the DAKA Policies, despite its release of Champps from all further liability thereunder;

     (iv) By failing to provide any type of response to Champps' letters concerning its satisfaction of all liabilities under the DAKA Policies and AIG's incorrect requests for payment;

     (v) Through its failure to release the surety bond and the irrevocable standby letter of credit posted by Champps at AIG's request, despite its repeated assurances that Champps had been discharged of all liability under the DAKA Policies; and

     (vi) Through its failure to provide Champps with any accounting under the DAKA Policies outlining to whom claims were paid and the corresponding amounts of each claim.

   b. AIG compelled Champps to hire attorneys and pursue this litigation to resolve this dispute and recover its damages;

   c. AIG committed a breach of its duties of good faith and fair dealing;

   d. AIG breached their fiduciary duty to Champps;

   e. AIG made misrepresentations in violation of M.G.L. c. 175, § 81;

   f. AIG made misrepresentations in violation of M.G.L. c. 176D, § 3;

       g.     AIG made claims and/or representations which had the capacity or tendency or effect of materially deceiving Champps, a buyer of insurance, in violation of 940 CMR § 3.05;

       h.     AIG made misleading and deceptive representations regarding the construction and utility, and the benefit to be derived from, the DAKA Policies, in violation of 940 CMR § 3.05;

       i.     AIG's actions described herein are oppressive or otherwise unconscionable in violation of 940 CMR § 3.16;

       j.     AIG is continually and wrongfully sending Champps numerous notices demanding payments or sums that are not due;

and

       j.     AIG failed, without excuse or justification, to fulfill its contractual promises promptly, including but not limited to its release of Champps from all liability incurred under the DAKA Policies and the release of the irrevocable standby letter of credit posted by Champps.

73.    AIG's violations of M.G.L. c. 93A, § 2, were willful and/or knowing.

74.    Champps has suffered damages, in the form of the loss of money and/or property, as a result of AIG's willful or knowing unfair or deceptive acts or practices.

75.    Champps provided AIG with a demand letter under M.G.L. c. 93A at least thirty days prior to the filing of the complaint.

76. The demand letter that Champps provided to AIG identified the claimant, reasonably described the unfair or deceptive acts or practices, and reasonably described Champps' injuries.

WHEREFORE, Champps demands judgment in its favor and against AIG for all monetary damages caused by its violation of M.G.L. c. 93A, including, without limitation, compensatory damages, consequential damages, prejudgment interest, post-judgment interest, double or treble damages as provided by M.G.L. c. 93A, § 11, all equitable relief that is necessary and proper, including an order requiring the immediate release of the irrevocable standby letter of credit, reasonable attorneys' fees, costs, and such other relief as this Court deems just.

## Count V
## Breach of Contract

77. Champps realleges and incorporates by reference all of the allegations stated above.

78. AIG and DAKA entered into a valid and binding contracts, for consideration, in which AIG was obligated to adhere to the terms and conditions thereof.

79. Specifically, with respect to the DAKA Policies, AIG agreed to compute premiums owed at the end of each audit period until a final adjustment under the policies were made.

80. Once a final adjustment under the DAKA Policies was made, AIG specifically agreed to release DAKA from any further liability under them.

81. AIG breached that contract by the conduct described above, including its subsequent requests for payments despite its representation that Champps' November 30, 2001 payment of $460 was a "final and complete" payment, and that no further payments were to be made.

82. Champps has suffered damages as a result of AIG's breach of contract.

WHEREFORE, Champps respectfully requests a judgment in favor of Champps and against AIG to pay all monetary damages caused by its breach of contract, including, without limitation, compensatory damages, consequential damages, prejudgment interest, post-judgment interest, costs, and such other relief as this Court deems just.

June 22, 2004       By: _____
                        Donna L. Depoian, Esq. (BBO # 547215)
                        614 Forest Street
                        North Andover, MA 01845
                        Telephone: 978-725-8880

                        -and-

                        ANDERSON KILL & OLICK, P.C.
                        John N. Ellison, Esq.
                        Claudine Q. Homolash, Esq.
                        1600 Market Street
                        Suite 2500
                        Philadelphia, PA 19103
                        Telephone: 215-568-4202

                        Attorneys for Plaintiff
                        Champps Entertainment, Inc.

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
CHAMPPS ENTERTAINMENT, INC.

## DEFENDANTS
AMERICAN INTERNATIONAL GROUP, INC.
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, PA

(b) County of Residence of First Listed Plaintiff: Essex
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed: New York
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Donna L. Depoian
614 Forest Street
North Andover, MA 01845
978 725-8880

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Diversity - 28 U.S.C. § 1332

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ Excess of $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____ DOCKET NUMBER _____

DATE: 6/23/04
SIGNATURE OF ATTORNEY OF RECORD: Donna L Depoian /CH

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) __Champps Entertainment, Inc. v. American International Group, Inc.__

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   ☐ I. 160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   ☐ II. 195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,     *Also complete AO 120 or AO 121
          740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.           for patent, trademark or copyright cases

   ☒ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
          315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
          380, 385, 450, 891.

   ☐ IV. 220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
          690, 810, 861-865, 870, 871, 875, 900.

   ☐ V. 150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   __none__

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

   YES ☐    NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)

   YES ☐    NO ☒

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

   YES ☐    NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

   YES ☐    NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

   YES ☒    NO ☐

   A. If yes, in which division do all of the non-governmental parties reside?

   Eastern Division ☒    Central Division ☐    Western Division ☐

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

   Eastern Division ☐    Central Division ☐    Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

   YES ☐    NO ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME __Donna L. Depoian    (BBO # 547215)__
ADDRESS __614 Forest Street, North Andover, MA 01845__
TELEPHONE NO. __978-725-8880__

(Coversheetlocal.wpd - 10/17/02)