USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/13/04

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

NATIONAL UNION FIRE INSURANCE COMPANY :
OF PITTSBURGH, PA.,
                                     :
            Petitioner,                     MEMORANDUM AND
                                     :        O R D E R
      - against -
                                     :      04 Civ. 6163 (NRB)
CHAMPPS ENTERTAINMENT, INC.,
                                     :
            Respondent.
------------------------------------x

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Petitioner National Union Fire Insurance Company of Pittsburgh, PA. ("National Union") brought this motion to compel arbitration against respondent Champps Entertainment, Inc. ("Champps") on August 9, 2004. For the reasons provided below, we grant petitioner's motion to compel arbitration.

### BACKGROUND

On July 1, 1994, National Union, a wholly-owned subsidiary of American International Group, Inc. ("AIG, Inc."), became an insurance carrier for DAKA International ("DAKA") and its employees. In connection with the insurance program, the parties entered into an Indemnity Agreement containing an arbitration clause. DAKA provided National Union with a letter of credit as security for its obligations under the insurance program. Plaintiff's outstanding letter of credit is worth over half a

million dollars.

In February, 1996 DAKA acquired Champps American, then spun off Champps and Fuddruckers into Unique Casual Restaurants ("Unique"). Id. at 2. On May 19, 1998, Unique and National Union entered into an Assumption Agreement under which Unique assumed all liabilities related to the DAKA policies. Id. at 4; Declaration of Anthony I. Giacobbe, Jr. ("Giacobbe Decl."), Ex. A. The Assumption Agreement contained its own arbitration section ("Arbitration Agreement") to supercede the arbitration clause in the Indemnity Agreement:

> 8. ARBITRATION
> 8.1 In the event of any dispute between the PARTIES with reference to the interpretation, application, formation, enforcement or validity of this Agreement or the Agreements, or their rights with respect to any transaction involved, whether such dispute arose before or after the termination of this Agreement, such dispute upon the written request of any PARTY, will be submitted to three arbitrators, one to be chosen by each party, and the third by the two so chosen . . .
> . . .
> 8.3 The arbitrators will have the power to award compensatory money damages, and interest thereupon, and will have exclusive jurisdiction over the entire matter in dispute, including any question as to its arbitrability . . .
> . . .
> 8.5 Said arbitration will take place in New York, New York unless otherwise agreed by the PARTIES hereto. The arbitration will be governed by the United States Arbitration Act, 9 U.S.C. 1, et seq., . . .
> 8.6 This article will survive termination of this Agreement.

Giacobbe Decl., Ex. A at 3-4.

Unique subsequently sold Fuddruckers and changed its name to

2

Champps. Id. at 3, Support Mem. at 3-4. Champps retained DAKA's liabilities and benefits pertaining to its insurance coverage from National Union.

On November 6, 2001, Robert Wynne, Senior Vice President for Willis Corroon Corporation of Massachusetts, Inc. ("Willis Corroon"), the insurance broker for the DAKA policies, sent a letter to Champps. In the letter, Wynne advised Champps that it owed a final retrospective premium adjustment payment of $460 for the period from July 1, 1994 to July 1, 1997. Declaration of Frederick J. Dreibholz ("Dreibholz Decl."), Ex. 3. The letter explained that this was a "final adjustment, which means that any changes in reserves or any new claims that unexpectedly appear are AIG's responsibility." Id. Enclosed with the letter was a copy of a June 4, 2001 letter from Anthony J. Conti, an Account Service Representative, explaining the same information to Mr. Wynne, and a Loss Provision Adjustment Report for the DAKA account. Dreibholz Decl., Ex. 4.

On November 30, 2001, Frederick J. Dreibholz, Champps' Chief Financial Officer, sent a letter to Conti explaining that:

> In reliance on your correspondence, Willis Correspondence, and our payment, we understand we will have no further liability for the insurance policies identified on the attached schedule. Any charges, changes to reserves or any new claims will be AIG's responsibility.
> In addition, we will be terminating the surety bond . . . .
> If this [enclosed $460] payment does not satisfy Daka International, Inc.'s ultimate and final liability for

3

the insurance policies and periods stated above, do not cash this check. Please return it to my attention . . .

Dreibholz Decl., Ex. 5. On December 12, 2001, the $460 check made out to American International Group was cashed. Dreibholz Decl., Ex. 6.

On January 2, 2002, Dreibholz sent a letter agreement to Chris Webster, Regional Manager of "AIGRM." The letter explained that "it appears that the insurance liability for Daka International, Inc. has been satisfied" and asked Webster to "confirm that this is the case by acknowledging this document." Dreibholz Decl., Ex. 7. Webster apparently countersigned the letter and Champps received it on January 22, 2002. Id. In its motion papers, Champps refers to this countersigned letter as the "2001/2002 Agreement." Opposition Memorandum ("Opp. Mem.") at 5, passim.

Champps alleges that during the subsequent years, AIG, Inc. has sent Champps requests for payment of several million dollars under the DAKA policies. Opp. Mem. at 8. Champps alleges that each time AIG, Inc. requested payment, Champps forwarded a letter to AIG, Inc. indicating that its liability had been satisfied in full, but AIG, Inc. never responded. Id. at 7-8.

On June 4, 2004, Champps filed suit against AIG, Inc. and National Union in the United States Court for the District of Massachusetts[1] seeking, inter alia, a declaratory judgment that it

---

[1] Champps Entertainment, Inc. v. American International Group, Inc. and National Union Fire Insurance Company of Pittsburgh, PA,

4

did not owe money under the DAKA policies and injunctive relief demanding release of the letter of credit. Opp. Mem., Ex. C.

## DISCUSSION

### I. Motion to Compel Arbitration

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., requires courts to "rigorously enforce agreements to arbitrate." Shearson/American Express v. McMahon, 482 U.S. 220, 226-27 (1987) (quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 221 (1985)). But "[w]hile federal policy generally favors arbitration, the obligation to arbitrate nevertheless remains a creature of contract. Because arbitrators' authority arises only when the parties agree in advance to that forum, 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001) (quoting AT & T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 648 (1986)).

To determine whether a dispute falls within the scope of an agreement's arbitration clause, a court should first classify the clause as either broad or narrow. Id. (citations omitted). A broad arbitration clause gives rise to a "presumption of arbitrability" and requires "arbitration of even a collateral matter . . . if the claim alleged implicates issues of contract

---

04 11444 RWZ.

5

construction or the parties' rights and obligations under it." Id. (citations and quotations omitted). See also WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 74 (2d Cir. 1997) (holding that a broad arbitration agreement "creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.").

We can safely classify the arbitration clause in the Assumption Agreement here as broad, as it covers "any dispute between the PARTIES with reference to the interpretation, application, formation, enforcement or validity of this Agreement or the Agreements," as well as "their rights with respect to any transaction involved, whether such dispute arose before or after the termination of this Agreement," where the "Agreements" include, inter alia, "the terms and conditions of any insurance policies and other Agreements" between DAKA and National Union. Giacobbe Decl., Ex. A at 1, 3. Champps argues, however, that the agreement is not broad enough to cover a dispute that solely concerns the actions of AIG, Inc.

It is undisputed that Champps is not obligated to arbitrate its dispute with AIG, Inc. Champps also argues, however, that it is not required to arbitrate with National Union. Relying on the case it filed in Massachusetts District Court, Champps asserts

6

that its dispute "simply" or "essentially" involves AIG, Inc.'s refusal to abide by its supposed agreement to release Champps from liability under the DAKA policies. Specifically, Champps contends that its lawsuit there "essentially involve[s] AIG's written release of Champps pursuant to a letter agreement . . . from any further liability under the DAKA Insurance Policies, and AIG's refusal to honor and perform under the agreement . . . ." Opp. Mem. at 5. Champps stresses that the lawsuit "involves AIG's failure to acknowledge and honor its release of Champps . . . from financial liability for any further payments for claims under the DAKA Insurance Policies," id. at 10, and that the dispute "simply" involves determining whether AIG, Inc. fully released Champps from any further liabilities under DAKA's insurance program. Id. at 18.

However, Champps' effort to limit its description of its dispute to one only involving AIG, Inc. does not withstand analysis. Even a cursory review of the Massachusetts complaint indicates that it seeks relief from National Union as well as AIG, Inc.[2] Specifically, the complaint asks the court to release the

---

[2] National Union provides a persuasive argument that Champps' complaint attempts to mask the fact that it is seeking relief from National Union by referring to various trade names that sound like "AIG, Inc." instead of referring National Union. For example, the exhibits supporting Champps' complaint and motion papers do not include the corporate name of AIG, Inc., but instead contain the trade name "AIG," the trade name or phrase "American International Group," or the name "AIGRM." Reply Mem. at 3-4. Champps' supporting documents are littered with the names of AIG, Inc.'s subsidiaries, including National Union, while the name AIG, Inc. is absent. Champps' assertion that "AIG was the sole corporate entity

letter of credit, Opp. Mem. at 11, 12, 13, 17, and to declare that Champps is released or discharged from all liability under the DAKA Policies. Id. at 12, 13. National Union argues that only National Union can release the letter of credit and that AIG, Inc. cannot. Reply Mem. at 4. We note in this regard that National Union is among the beneficiaries of the letter of credit, while AIG, Inc. is not. Ex. A to Massachusetts complaint, attached to the Dreibholz Decl. as Ex. 3.

Furthermore, discharging Champps' liability under the DAKA policies involves National Union even if the "2001/2002 Agreement" between AIG, Inc. and Champps does not. It should be recalled that clause 8.1 of the Assumption Agreement provides for arbitration of "any dispute between the PARTIES with reference to the interpretation, application, formation, enforcement or validity of this Agreement or the Agreements, or their rights with respect to any transaction involved, whether such dispute arose before or after the termination of this Agreement." Giacobbe Decl., Ex. A at 3. The Massachusetts action clearly involves a dispute between the parties-- Champps and National Union-- with reference to the "enforcement or validity" of the DAKA insurance policies and asks the Massachusetts district court to provide remedies that affect National Union's rights with respect to the insurance policies,

---

Champps dealt with concerning the DAKA Insurance Policies" is starkly at odds with the exhibits it uses to support its argument. Opp. Mem. at 13.

which are among the "Agreements" referred to in the Assumption Agreement. Id. at 1. Thus, it is beyond cavil that the dispute comes within the Arbitration Agreement. Therefore, we agree with National Union that it may compel Champps to arbitrate Champps' claims against it.

Finally, we recognize that there is a potential for overlap between the Massachusetts action and an arbitration between Champps and National Union. The remedy, if any, would appear to lie in the District of Massachusetts. See, e.g., WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 74 (2d Cir. 1997) (holding that district court may stay case pursuant to inherent power to control disposition of cases on its docket, and noting that a stay is particularly appropriate where "a party to an arbitration agreement attempts to avoid that agreement by suing a related party with which it has no arbitration agreement in the hope that the claim will be adjudicated first and have preclusive effect in the arbitration").

## CONCLUSION

For the foregoing reasons, we grant petitioner's motion to compel arbitration. We will retain jurisdiction over any subsequent petition with respect to the award.

**IT IS SO ORDERED.**

DATED:   New York, New York
         December 13, 2004

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

10

A copy of the foregoing Memorandum and Order has been mailed on this date to the following:

For Petitioner

Michael S. Davis, Esq.
Anthony I. Giacobbe, Jr., Esq.
Zeichner Ellman & Krause LLP
575 Lexington Avenue
New York, New York 10022


For Respondent

John L. Ellison, Esq.
Claudine Q. Homolash, Esq.
Anderson, Kill, & Olick, P.C.
1600 Market Street
Suite 2500
Philadelphia, PA 19103

11