Donna L. Depoian, Esq. (BBO # 547215)
614 Forest Street
North Andover, MA 01845
Telephone: 978-725-8880
        -and-
ANDERSON KILL & OLICK, P.C.
John N. Ellison, Esq.
Claudine Q. Homolash, Esq.
1600 Market Street
Suite 2500
Philadelphia, PA 19103
(215) 568-4202
Attorneys for Plaintiff
Champps Entertainment, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHAMPPS ENTERTAINMENT, INC.,<br>1035 Park Meadows Drive, Suite 560<br>Littleton, Colorado 80124<br><br>                                  Plaintiff,<br>v.<br><br>AMERICAN INTERNATIONAL GROUP, INC.,<br>70 Pine Street<br>New York, New York 10270<br><br>                                  Defendants. | CIVIL ACTION NO.   04-11444<br><br>**JURY TRIAL DEMANDED ON ALL COUNTS** |

### FIRST AMENDED COMPLAINT

Plaintiff Champps Entertainment, Inc. ("Champps"), by its undersigned counsel, hereby submits its First Amended Complaint against Defendant American International Group, Inc. ("AIG, Inc."), and in support thereof, avers as follows:

## Preliminary Statement

1. This is an action for violations of the Massachusetts Consumer Protection Act (M.G.L. c. 93A), for a declaratory judgment, for breach of contract, and for injunctive relief.

2. This lawsuit arises out of AIG, Inc.'s failure to acknowledge and honor its release of Champps, as successor to DAKA International, Inc. ("DAKA"), on behalf of itself and for itself and its wholly-owned and controlled subsidiary, National Union Fire Insurance Company of Pittsburgh, PA ("National Union") (collectively, "AIG"), from financial liability for any further payments for claims that are covered by insurance policies purchased by DAKA from AIG for events occurring during the 1994 through 1997 policy periods.

3. Specifically, AIG's wrongful failure to acknowledge its release of Champps from any further liability under these insurance policies for itself and its wholly-owned and controlled subsidiary and AIG's wrongful withholding of a $526,000 irrevocable standby letter of credit and a surety bond posted for approximately $526,254, in connection with the insurance policies, has caused and continues to cause Champps substantial damage.

## Parties

4. Plaintiff Champps is a Delaware corporation with its principal place of business at 10375 Park Meadows Drive, Suite 560, Littleton, Colorado 80124.

5. Up until December 1999, Champps and DAKA's principal place of business was at 55 Ferncroft Road, Danvers, Massachusetts 01923. In December

1999, Champps relocated its corporate headquarters to Littleton, Colorado, but still maintains an office in North Andover, Massachusetts.

6. Champps owns and operates restaurants and franchises throughout the United States.

7. Defendant American International Group, Inc. ("AIG, Inc.") is a corporation organized under the laws of Delaware that maintains a principal place of business at 70 Pine Street, New York, New York, licensed to do business in the Commonwealth of Massachusetts. National Union Fire Insurance Company of Pittsburgh, PA ("National Union") is a member company of AIG, Inc and a corporation organized under the laws of the Commonwealth of Pennsylvania, that maintains a principal place of business at 70 Pine Street, New York, New York 10270. National Union is a wholly-owned and controlled subsidiary of AIG, Inc.

## Jurisdiction and Venue

8. The subject matter jurisdiction of this Court is based upon 28 U.S.C. § 1332, in that there is complete diversity of citizenship among the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391, in that a substantial part of the events giving rise to this action occurred in this District.

## Factual Background

### A. The Relationship Between Champps and DAKA

10. In February 1996, Champps was acquired by DAKA, a diversified food service company.

11. In July 1997, DAKA "spun off" its restaurant companies, including those companies operating Champps Americana Restaurants and Fuddruckers Restaurants, into a newly formed company, Unique Casual Restaurants, Inc. ("Unique").

12. As successor to DAKA by virtue of the "spin-off", Unique assumed certain liabilities pertaining to DAKA that occurred prior to the "spin-off" and indemnified Compass, the current owner of DAKA, against losses relative to these matters.

13. As a direct result of the "spin-off", Unique assumed all liabilities and benefits of DAKA's insurance coverage, including the coverage that AIG provided to DAKA for the 1994 through 1997 policy periods.

14. In July 1999, Unique changed its name to Champps, and Champps thereby assumed all of the liabilities and benefits of DAKA's insurance coverage provided by AIG, INC. for the 1994 through 1997 policy periods.

### B. DAKA's Insurance Coverage

15. DAKA's insurance coverage consisted of various types of coverage, including property, business automobile, workers compensation, employers liability and commercial general liability coverages (the "DAKA Policies").

16. Most of the DAKA Policies, including the workers compensation and general liability policies, were "Large Deductible" policies, each containing a deductible of $250,000 per incident.

17. The workers compensation insurance policies contained a "Final Premium" section, which sets forth AIG's obligation to determine the "Final Premium" once the policy period ends (the "DAKA Workers Comp. Policies").

## C. The Surety Bond and the Irrevocable Standby Letter of Credit

18. Throughout the years the DAKA Policies were in place, DAKA, Unique and subsequently Champps all purchased surety bonds with Continental Casualty Company ("CNA") as collateral for the DAKA Policies.

19. In addition to posting the surety bonds, AIG was also annually provided with cash collateral in connection with the DAKA Policies in excess of one million dollars.

20. On February 11, 1999, at AIG's request, Champps replaced the current surety bond with an irrevocable standby letter of credit of $526,000 for the payment of claims under the DAKA Policies. (A copy of the Irrevocable Standby Letter of Credit is attached hereto as Ex. "A").

21. From the time Champps assumed its liabilities under the DAKA Policies up until their final adjustment, Champps continued to make claim-related payments as AIG requested.

### D. Final Adjustment Under the DAKA Policies

22. Prior to November 6, 2001, Champps had made payments in excess of $11,000,000 to AIG, INC..

23. By letter dated November 6, 2001, Robert Wynne, Senior Vice President for Willis Corroon Corporation of Massachusetts, Inc. ("Willis Corroon"), the insurance broker for the DAKA Policies, advised Champps that a final retrospective premium adjustment payment of $460 was owed under the DAKA Policies.

24. Enclosed with the November 6, 2001 letter was a copy of the final adjustment from AIG dated June 4, 2001 (the "June 4, 2001 Final Adjustment").

25. The June 4, 2001 Final Adjustment states:

Re:   Account Name:         Daka International, Inc.
      Policy Period:        7/1/94-7/1/97
      Valuation Date:       03/31/2001
      Adjustment #:         **Final**
      Retro Premium/Return: $460

                    *    *    *

**There will be no more adjustments done to this account. The policies captioned above can be considered "FINAL AND COMPLETE."** If you have any questions feel free to contact me at (212) 770-1279.

(Letter from Anthony J. Conti of AIG to Willis Corroon, dated June 4, 2001 (emphasis added), attached hereto as Ex. "B ").

26. The June 4, 2001 Final Adjustment also included a Loss Provision Adjustment Report for DAKA prepared by AIG.

27. The Loss Provision Adjustment Report also reflected a final payment due of $460.

28. By letter dated November 30, 2001, Champps responded to AIG's payment request, forwarding along with its response a check for $460.

29. In Champps' November 30, 2001 letter to Champps reconfirmed facts stated in Willis Corroon's November 6, 2001 letter and the June 4, 2001 Final Adjustment, most importantly that no additional payments under the DAKA Policies are due.

30. Champps' November 30, 2001 letter specifically requested:

> If this does not satisfy DAKA International, Inc.'s ultimate and final liability for the insurance policies and periods stated above, do not cash this check. Please return it to my attention.

(Letter from Frederick J. Dreibholz to Anthony J. Conti, dated November 30, 2001, attached hereto as Ex. "C").

31. Champps' November 30, 2001 letter also notified AIG that Champps was terminating the irrevocable standby letter of credit that was posted in place of the surety bond.

32. On December 12, 2001, AIG cashed Champps $460 check, confirming AIG's agreement that DAKA's "ultimate and final liability" under the DAKA Policies was satisfied.

33. On January 2, 2002, as a final measure to ensure that all liabilities regarding the DAKA Policies had been satisfied, Champps forwarded a confirmation letter to AIG. (A copy of the January 2, 2002 letter is attached hereto as Ex. "D").

34. On January 22, 2002, Champps received a response from AIG regarding Champps' January 2, 2002 letter, executed by an AIG official with appropriate authority, once again confirming that "the insurance liability for DAKA International, Inc. has been satisfied." Id.

35. At all relevant times, AIG, Inc. had full authority to act on behalf of its wholly-owned and controlled member company subsidiary, National Union, and to release any claims and/or liabilities that may have been due and owing to AIG.

### E. AIG's Subsequent Demands For Payment Despite Champps' Complete Satisfaction Under the DAKA Policies

36. From January 2, 2002 through this year, Champps has received invoices from AIG for claims paid, or has received telephone calls from AIG regarding outstanding balances claimed to be owed under the DAKA Policies.

37. Champps responded to AIG's requests for payment by forwarding letters to AIG indicating that Champps liabilities under the DAKA Policies had been completely satisfied.

38. Prior to the initiation AIG never replied to any of Champps' response letters addressing AIG's requests for payment.

39. In addition, AIG's multiple subsequent requests for payment are both inconsistent and unsubstantiated.

40. In November 2002, Champps began receiving demands from AIG for $1.5 million allegedly owed under the DAKA Policies with no supporting documentation that would substantiate this outstanding balance.

41. By e-mail dated September 24, 2003, without any explanation, AIG indicated that a balance of $57,186 was owed for DAKA's premium and audit/retro adjustments.

42. By letter dated October 29, 2003 from AIG to Champps' current insurance broker, AIG indicated, without providing any detail regarding the paid losses by claimant for the time period in which the claims were incurred, that claims payments under the DAKA Policies totaled $4,078,361.06, and that Champps owed an outstanding balance of $1,553,211.06.

43. Champps also received multiple invoices from AIG's Alpharetta, Georgia office, demanding payment in the amount of $72,945.25, an amount obviously inconsistent with AIG's other payment requests.

**F. AIG's Failure to Release Champps' Surety Bond and Irrevocable Standby Letter of Credit**

44. As set forth above, in February 1999, Champps posted an irrevocable surety bond in the amount of $526,254, for the payment of claims under the DAKA Policies. This surety bond was subsequently replaced with an irrevocable standby letter of credit in the amount of $526,000 in November 2003.

45. In order to cancel Champps liability under both the surety bond and the letter of credit, AIG's authorization is required.

46. Even though AIG released Champps from any further liability under the DAKA Policies, AIG has refused and failed to release the surety bond and the irrevocable standby letter of credit, despite repeated requests from Champps.

47. Despite its previous release of Champps from any further liability under the DAKA Policies and written representations that the DAKA Policies can be considered "FINAL AND COMPLETE", AIG continues to demand substantial payments from Champps under the DAKA Policies without substantiation.

## Count I
## Injunctive Relief

48. Champps realleges and incorporates by reference all of the allegations stated above.

49. Based on the foregoing, as a result of its release of Champps from any further liability under the DAKA Policies, AIG was likewise obligated to release the irrevocable letter of credit and the surety bond, which it has failed and refused to do.

50. Due to the nature of these instruments, Champps is required to obtain AIG's consent to have them released and closed.

51. AIG's refusal and failure to consent is without legal justification.

52. Champps will suffer irreparable harm if AIG is not enjoined from drawing down on the surety bond and the letter of credit, and ordered to release these instruments.

53. Any harm suffered by AIG by the granting of injunctive relief would be minimal and would be far outweighed by the harm to Champps that would be caused by the denial of injunctive relief.

54. Granting Champps injunctive relief will not disserve any public interest.

WHEREFORE, Champps demands injunctive relief enjoining AIG including its wholly-owned and controlled operating subsidiaries, from:

1. drawing down on the surety bond and the letter of credit; and
2. consenting to the release of these instruments.

### Count II
### Declaratory Judgment

55. Champps realleges and incorporates by reference all of the allegations stated above.

56. Champps seeks a declaration, in accordance with the terms of the DAKA Policies and AIG's agreement that Champps' liability under them has been satisfied, that it owes AIG no further payments under the DAKA Policies.

57. Champps seeks a declaration that, because Champps has no additional financial obligation to AIG, AIG is required to release immediately the surety

bond and the irrevocable standby letter of credit posted by Champps in connection with the DAKA Policies.

58. While Champps has no further financial obligation to AIG under the DAKA Policies or any other insurance policies that it sold to Champps, AIG continues to demand payments from Champps.

59. Notwithstanding its release of Champps, AIG continues to refuse to release Champps' surety bond and irrevocable standby letter of credit.

60. An actual and justiciable controversy exists between the parties with respect to these issues.

WHEREFORE, Champps demands a judicial declaration by this Court that: 1) Champps is released from all liability under the DAKA Policies; 2) AIG is required to immediately release the surety bond and the irrevocable standby letter of credit posted by Champps for AIG in connection with the DAKA Policies; and 3) it is entitled to all compensatory and consequential damages, costs of suit, reasonable attorneys' fees, pre-judgment interest, post-judgment interest, and such other relief as this Court deems just.

### Count III
### Account Stated

61. Champps realleges and incorporates by reference all of the allegations stated above.

62. AIG sent Champps a statement of Final Adjustment and Loss Provision Adjustment Report indicating that a final payment of $460 was due and owing (the "Statement of Account").

63. Champps accepted the Statement of Account as a final balance due to AIG under the DAKA Policies, forwarding a check to AIG in the amount of $460, requesting that AIG not cash the check unless it agreed that the $460 payment fully satisfied Champps ultimate and final liability under the DAKA Policies.

64. AIG cashed the $460 check without protest or objection, duly acknowledging that Champps' payment of $460 was true and correct, and deemed a final payment.

65. On January 22, 2002, Champps received a signed confirmation from an AIG official with appropriate authority confirming that the insurance liability under the DAKA Policies had been fully satisfied.

66. By reason of the foregoing, any further obligations that Champps may owe to AIG under the DAKA Policies were discharged by an account stated.

WHEREFORE, Champps demands a judgment discharging Champps from all liability under the DAKA Policies and immediately releasing the surety bond and the irrevocable standby letter of credit posted by Champps for AIG in connection with the DAKA Policies, together with all compensatory and consequential damages, costs of suit, reasonable attorneys' fees, pre-judgment interest, post-judgment interest, and such other relief as this Court deems just.

## Count IV
## Violations of M.G.L. c. 93A

67. Champps realleges and incorporates by reference all of the allegations stated above.

68. The actions and transactions herein alleged to be unfair and deceptive acts or practices occurred primarily and substantially within the Commonwealth of Massachusetts.

69. Among other things, the DAKA Policies were brokered in Massachusetts; the insurance broker, Willis Corroon, for the DAKA Policies was located in Massachusetts; the AIG office underwriting and selling of the insurance policies was located in Massachusetts; and the relevant offices of DAKA and Champps were at all relevant times located in Massachusetts.

70. Champps engages in trade or commerce within the meaning of M.G.L. c. 93A, § 11.

71. During the course of engaging in trade or commerce in the Commonwealth of Massachusetts, AIG has committed unfair or deceptive acts or practices declared unlawful by M.G.L. c. 93A, § 2, and by rules and regulations issued under M.G.L. c. 93A, § 2(c), including but not limited to the following:

    (a) AIG has misrepresented material facts pertaining to Champps liability under the DAKA Policies by, among other things:

        (i) Representing falsely and inconsistently that Champps had further payment obligations under the DAKA Policies, despite its earlier release and discharge of Champps from any further liability under the DAKA Policies;

      (ii)    Concealing material information regarding its calculations concerning amounts purportedly owed by Champps under the DAKA Policies;

      (iii)    Providing to Champps multiple letters and invoices concerning amounts still owed under the DAKA Policies, despite its release of Champps from all further liability thereunder;

      (iv)    By failing to provide any type of response to Champps' letters concerning its satisfaction of all liabilities under the DAKA Policies and AIG's incorrect requests for payment;

      (v)    Through its failure to release the surety bond and the irrevocable standby letter of credit posted by Champps at AIG's request, despite its repeated assurances that Champps had been discharged of all liability under the DAKA Policies; and

      (vi)    Through its failure to provide Champps with any accounting under the DAKA Policies outlining to whom claims were paid and the corresponding amounts of each claim.

    (b)    AIG compelled Champps to hire attorneys and pursue this litigation to resolve this dispute and recover its damages;

    (c)    AIG committed a breach of its duties of good faith and fair dealing;

    (d)    AIG breached their fiduciary duty to Champps;

    (e)    AIG made misrepresentations in violation of M.G.L. c. 175, § 81;

    (f)    AIG made misrepresentations in violation of M.G.L. c. 176D, § 3;

    (g)    AIG made claims and/or representations which had the capacity or tendency or effect of materially deceiving Champps, a buyer of insurance, in violation of 940 CMR § 3.05;

    (h)    AIG made misleading and deceptive representations regarding the construction and utility, and the benefit to be derived from, the DAKA Policies, in violation of 940 CMR § 3.05;

    (i)    AIG's actions described herein are oppressive or otherwise unconscionable in violation of 940 CMR § 3.16;

    (j)    AIG is continually and wrongfully sending Champps numerous notices demanding payments or sums that are not due; and

  (k) AIG failed, without excuse or justification, to fulfill its contractual promises promptly, including but not limited to its release of Champps from all liability incurred under the DAKA Policies and the release of the irrevocable standby letter of credit posted by Champps.

72. AIG's violations of M.G.L. c. 93A, § 2, were willful and/or knowing.

73. Champps has suffered damages, in the form of the loss of money and/or property, as a result of AIG's willful or knowing unfair or deceptive acts or practices.

74. Champps provided AIG with a demand letter under M.G.L. c. 93A at least thirty days prior to the filing of the complaint.

75. The demand letter that Champps provided to AIG identified the claimant, reasonably described the unfair or deceptive acts or practices, and reasonably described Champps' injuries.

WHEREFORE, Champps demands judgment in its favor and against AIG for all monetary damages caused by its violation of M.G.L. c. 93A, including, without limitation, compensatory damages, consequential damages, prejudgment interest, post-judgment interest, double or treble damages as provided by M.G.L. c. 93A, § 11, all equitable relief that is necessary and proper, including an order requiring the immediate release of the irrevocable standby letter of credit, reasonable attorneys' fees, costs, and such other relief as this Court deems just.

### Count V
### Breach of Contract

76. Champps realleges and incorporates by reference all of the allegations stated above.

77. AIG and DAKA entered into a valid and binding contracts, for consideration, in which AIG was obligated to adhere to the terms and conditions thereof.

78. Specifically, with respect to the DAKA Policies, AIG agreed to compute premiums owed at the end of each audit period until a final adjustment under the policies were made.

79. Once a final adjustment under the DAKA Policies was made, AIG specifically agreed to release DAKA from any further liability under them.

80. AIG breached that contract by the conduct described above, including its subsequent requests for payments despite its representation that Champps' November 30, 2001 payment of $460 was a "final and complete" payment, and that no further payments were to be made.

81. Champps has suffered damages as a result of AIG's breach of contract.

WHEREFORE, Champps respectfully requests a judgment in favor of Champps and against AIG to pay all monetary damages caused by its breach of